| | |
|---|---|
| **MIDDLE TENNESSEE LUMBER CO., INC.;** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **RFS PROTECH LLC,** ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 3:23-cv-01168 |

_____

### RFSPROTECH'S ANSWER AND COUNTERCLAIMS
_____

### ANSWER

Defendant RfsProtech, LLC ("RfsProtech"), by and through its undersigned counsel, hereby provides this Answer to Plaintiff's Complaint as follows.

### NATURE OF THE ACTION

1. This is a case to collect a down payment withheld after a rescinded purchase order. Plaintiff initially agreed to purchase over $1.5 million worth of equipment from Defendant, pursuant to which Plaintiff wired Defendant funds representing one-fourth of the total invoice as a down payment. Plaintiff later properly cancelled its order, and although Defendant agreed to, Defendant has not reimbursed Plaintiff the funds it wired as a down payment.

**Answer: RfsProtech admits that Plaintiff agreed to purchase over $1.5 million worth of equipment and services from RfsProtech. RfsProtech admits that Plaintiff wired RfsProtech**

**25% of the agreed funds as a down payment. RfsProtech admits that it has not reimbursed Plaintiff any of the funds Plaintiff paid RfsProtech. RfsProtech denies that Plaintiff is entitled to any reimbursement of funds. RfsProtech denies any remaining allegations in this paragraph.**

## PARTIES AND JURISDICTION

2. Plaintiff Mid TN Lumber is a corporation duly organized and existing under the laws of the State of Tennessee, with its principal place of business in Burns, Dickson County, Tennessee.

**Answer: Admit upon information and belief.**

3. RFS Protech is a limited liability company duly authorized and existing under the laws of the State of North Carolina with its principal place of business in Matthews, North Carolina.

**Answer: Admit.**

4. This Court has jurisdiction of this action pursuant to Tenn. Code Ann. § 16-11-101 et seq. Venue is proper pursuant to Tenn. Code Ann.§ 20-4-101 et seq. because the causes of action asserted herein arose in Dickson County, Tennessee.

**Answer: RfsProtech admits this Court has jurisdiction over this matter and that venue is proper in this Court pursuant to 28 U.S.C. §§ 123(b)(1) and 1441(a).**

## FACTUAL BACKGROUND

5. On May 6, 2022, Mid TN Lumber purchased assembly equipment from RFS Protech, the total invoice of which, including installation and training costs, was $1,563,000.

**Answer: Admit.**

6. The invoice defined the payment terms as requiring a 25% down payment upon purchase, another 25% after three months, 40% when the equipment was shipped, and the final 10% "[n]et 30 after [i]nstall."

**Answer: RfsProtech admits that its invoice allowed a payment plan where Plaintiff paid 25% down at purchase, 25% after 3 months, 40% upon shipment, and 10% "net 30 after install." RfsProtech denies any allegation that this payment plan modified Plaintiff's obligation ultimately to pay the full contract price. RfsProtech denies any remaining allegations in this paragraph.**

7. Pursuant to the invoice, Mid TN Lumber wired $390,750 to RFS Protech on approximately May 6, 2022.

**Answer: Admit.**

8. Before the next payment became due, Mid TN Lumber canceled its order with RFS Protech and sought return of the wired funds.

**Answer: RfsProtech admits that Plaintiff attempted to cancel its order and sought return of its wired finds. RfsProtech denies Plaintiff attempted to cancel its order before the second payment became due. RfsProtech denies Plaintiff had any right to cancel its order or to receive a return of the wired funds. RfsProtech denies any remaining allegations in this paragraph.**

9. RFS Protech agreed to cancel the order and return the funds to Mid TN Lumber.

**Answer: Denied.**

10. However, RFS Protech still has not returned the funds to Mid TN Lumber.

**Answer**: **RfsProtech admits it has not returned any funds to Plaintiff. RfsProtech denies that Plaintiff is entitled to the return of any funds.**

## LEGAL CLAIMS

### COUNT I
### (Recission – Tenn. Code Ann. § 47-2-209)

11. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 10 of this Complaint as fully as if set out verbatim.

**Answer: RfsProtech incorporates its answers set forth in response to paragraphs 1 through 10 of the Compliant as if set out verbatim.**

12. Plaintiff and Defendant mutually agreed to rescind the purchase order and terminate the contract.

**Answer: Denied.**

13. Defendant is obligated to return the funds wired by Plaintiff as a down payment.

**Answer: Denied.**

14. Defendant has not returned the funds wired by Plaintiff.

**Answer: RfsProtech admits it has not returned any funds to Plaintiff. RfsProtech denies that Plaintiff is entitled to the return of any funds.**

15. As a direct and proximate result thereof, Plaintiff has suffered direct, consequential, and incidental damages.

**Answer: Denied.**

//
//

Page 4 of 15

Case 3:23-cv-01168    Document 8    Filed 11/13/23    Page 4 of 15 PageID #: 30

## COUNT II
### (Breach of Contract)

16. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 10 of this Complaint as fully as if set out verbatim.

**Answer: RfsProtech incorporates its answers set forth in response to paragraphs 1 through 10 of the Compliant as if set out verbatim.**

17. In the alternative, Plaintiff and Defendant agreed to, and were bound by, a valid and enforceable contract in which Defendant agreed to return the funds wired by Plaintiff.

**Answer: Denied.**

18. Defendant has materially breached the contract by failing to return the funds wired by Plaintiff.

**Answer: Denied.**

19. As a direct and proximate result of Defendant's breach, Plaintiff has suffered direct, consequential, and incidental damages.

**Answer: Denied.**

## COUNT III
### (Unjust Enrichment)

20. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 10 of this Complaint as fully as if set out verbatim.

**Answer: RfsProtech incorporates its answers set forth in response to paragraphs 1 through 10 of the Compliant as if set out verbatim.**

21. In addition and in the alternative, the Defendant has been unjustly enriched by the receipt and retention of the wired funds.

**Answer**: **Denied.**

22. Plaintiff wired funds to Defendant in association with a purchase order that has since been cancelled.

**Answer**: **Denied.**

23. Defendant has withheld funds to which it is not entitled and has appreciated benefits therewith.

**Answer**: **Denied.**

24. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries.

**Answer**: **Denied.**

25. Equity and justice require that Defendant disgorge the amount it received.

**Answer**: **Denied.**

26. The remainder of Plaintiff's Complaint contains Plaintiff's prayers for relief to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to the relief sought in the Complaint.

27. Defendant denies all allegations of the Complaint not specifically admitted in the preceding paragraphs.

## **AFFIRMATIVE DEFENSES**

For its affirmative defenses to Plaintiff's Complaint, RfsProtech states as follows:

28. Plaintiff's Complaint fails to state a claim upon which relief can be granted, in whole or in part, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

29. RfsProtech did not breach any contractual or other duties owed Plaintiff. Except as prevented or precluded by Plaintiff's anticipatory repudiation and material breaches of the parties' contract, RfsProtech fully complied with all of its contractual obligations.

30. Pursuant to T.C.A. § 47-2-106(4), Plaintiff had no right to cancel the parties' contract because RfsProtech had not breached the contract.

31. Plaintiff had no right to terminate the parties' contract because Plaintiff had no power created by agreement or law to put an end to the contract pursuant to T.C.A. § 47-2-106(3).

32. Even if Plaintiff had properly cancelled or terminated the parties' contract, Plaintiff would not be entitled to reimbursement of funds paid or discharge Plaintiff's breaches of the contract pursuant to T.C.A. § 47-2-720.

33. RfsProtech was entitled to suspend performance pursuant to T.C.A. § 47-2-610 in light of Plaintiff's repudiation of the Contract.

34. Plaintiff failed to state with particularity the reasons for any rejection of the goods pursuant to T.C.A. § 47-2-605.

35. Plaintiff did not suffer any damages due to RfsProtech's actions or omissions, or Plaintiff otherwise failed to mitigate its alleged damages.

36. Plaintiff's claims are barred by the doctrines of unclean hands, waiver, and estoppel.

37. Plaintiff's claims are barred by its breach of its implied duty of good faith and fair dealing.

38. Plaintiff's contract claims fail for lack of consideration.

39. Plaintiff's contract claims are barred by the statute of frauds.

40. Plaintiff's claims arise from an express written agreement, thus precluding Plaintiff's equitable claims.

41. Investigation into the issues surrounding Plaintiff's Complaint has just begun, and the parties have yet to engage in discovery. RfsProtech reserves the right to amend its Answer in accordance with the Federal Rules of Civil Procedure should investigation and discover so warrant.

WHEREFORE, having answered the Complaint filed against it, RfsProtech respectfully requests Plaintiff's Complaint be dismissed and that Defendant be awarded its reasonable attorneys' fees and costs incurred in defending this Action.

## COUNTERCLAIMS

Defendant/Counter-Plaintiff RfsProtech, LLC ("RfsProtech"), for its Counterclaim against Plaintiff/Counter-Defendant Middle Tennessee Lumber Co., Inc. ("MTLC") alleges as follows.

## PARTIES

1. RfsProtech is a North Carolina limited liability company with its principal place of business located in Matthews, North Carolina.

2. MTLC is a Tennessee corporation with its principal place of business located in Dickson County, Tennessee.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

4. This Court has personal jurisdiction over MTLC because it was organized under Tennessee law and is headquartered in this district.

5. Venue is proper in this court pursuant to 28 U.S.C. §§ 123(b)(1) and 1441(a).

**FACTUAL ALLEGATIONS**

6. On or about May 6, 2022, MTLC entered a contract for sale to purchase from RfsProtech a specially manufactured core line assembly system (the "Contract" and the "System"). A true and correct copy of the purchase order memorializing the material terms of the Contract is attached hereto as **Exhibit A**.

7. The Contract price was $1,563,000.00 (the "Contract Price").

8. The Contract allowed payment of the Contract Price under the following schedule: 25% down payment, 25% three months after the down payment, 40% at shipment of the System, and 10% within 30 days after installation of the System.

9. The Contract called for delivery of the System 15 months after RfsProtech received from MTLC the signed purchase order and down payment.

10. MTLC returned the signed purchase order and made the down payment within the first half of May of 2022.

11. Upon receiving the down payment, RfsProtech began building the System and ordering accompanying machinery for the System. As RfsProtech continued to build the System over the next several months, Karl Ogden ("Ogden") of RfsProtech and Joshua Green ("Green") of MTLC exchanged correspondence determining various specifications for the System to fit MTLC's needs.

12. MTLC failed to make the second 25% payment three months after the initial 25% down payment. Green represented that, prior to making this second payment, MTLC wanted to view a similar assembly system in operation at another facility.

13. RfsProtech continued to demand this second payment, but accommodated MTLC's request by informing Green that a similar system would soon be operational at the "Graf Facility" in Kentucky.

14. As MTLC unreasonably delayed efforts to visit the Graf Facility to view the similar assembly system, RfsProtech continued demanding MTLC make the second payment that was past due.

15. In or around the end of January of 2023, Green finally visited the Graf Facility and viewed the similar assembly system in operation. As Green later represented to Ogden, the similar assembly system was perfectly operational and conformed to the relevant specifications.

16. Nonetheless, MTLC never made the overdue second payment of 25% of the Contract Price.

17. In or around February of 2023, without cause or explanation, and after RfsProtech incurred substantial costs in building the System well in excess of the initial down payment, MTLC repudiated the Contract by attempting unilaterally to cancel its order with RfsProtech.

18. MTLC never identified for RfsProtech any particular defect in the System that could justify rejecting the System in MTLC's attempt to cancel its order.

Page 10 of 15

Case 3:23-cv-01168   Document 8   Filed 11/13/23   Page 10 of 15 PageID #: 36

19. In a phone call between Green and Ogden, Green requested that RfsProtech cancel the order and refund MTLC the 25% down payment. Ogden represented RfsProtech would only be willing to provide any refund if RfsProtech was able to find a different buyer for resale of the portion of the System already built.

20. This discussion is confirmed by Green's July 7, 2023, email to Ogden, asking, "Have you had any new orders for your lumber core line that would present an opportunity for us to be refunded our down payment?" Ogden responds that same day, saying, "No, in fact, it has been nothing but a struggle for us with your cancellation of order. We had machinery in working process that we spent money and time on. We also have paid over $400,000 in accompanying machinery for the system, which we are now sitting on." A true and correct copy of this email exchange is attached hereto as **Exhibit B**.

21. After expending reasonable effort to resell the System, RfsProtech has not been able to find a suitable buyer.

22. MTLC remains in breach of the Contract by repudiating the Contract in February of 2023 and failing to pay the remaining balance on the Contract Price.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

23. The Contract represents a valid and enforceable contract for sale between MTLC and RfsProtech for special manufacture and sale of the System at a Contract Price of $1,563,000.

24. The Contract obligated MTLC to make an initial down payment of 25% of the Contract Price, and then make a second payment of an additional 25% of the Contract Price three months later. The Contract also obligated MTLC ultimately to pay the full Contract Price and accept delivery of the System.

25. Despite repeated demands by RfsProtech, MTLC breached the Contract by, *inter alia*, failing to make the second 25% payment of the Contract Price when due, attempting to cancel its order for the System, and refusing to make any more payments on the Contract Price.

26. Except to the extent MTLC's breach of the Contract prevented RfsProtech from performing under the Contract and RfsProtech suspended performance pursuant to T.C.A. § 47-2-610, RfsProtech properly performed all of its obligations under the Contract.

27. Pursuant to T.C.A. § 47-2-605, MTLC is precluded from relying on any defects in the System to justify its attempt to cancel the order, as MTLC failed to identify any defects in the System with particularity, and RfsProtech could have seasonably cured any alleged defects in the System.

28. As a direct and proximate result of MTLC's breach of the Contract, RfsProtech has incurred damages including, *inter alia*, MTLC's remaining unpaid balance on the Contract Price and other incidental damages, including the significant expenses RfsProtech incurred in building, maintaining, and storing the System, as well as additional incidental damages RfsProtech will incur in the future, all in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**ANTICIPATORY REPUDIATION (T.C.A. § 47-2-610)**

29. The Contract represents a valid and enforceable contract for sale between MTLC and RfsProtech for special manufacture and sale of the System at a Contract Price of $1,563,000.

30. The Contract obligated MTLC to make an initial down payment of 25% of the Contract Price, and then make a second payment of an additional 25% of the Contract Price three months later. The Contract also obligated MTLC ultimately to pay the full Contract Price and accept delivery of the System.

31. MTLC repudiated the Contract when it attempted to cancel its order for the System, refused to make any more payments toward the Contract Price, and requested a refund of its initial down payment.

32. Except to the extent MTLC's breach of the Contract prevented RfsProtech from performing under the Contract and RfsProtech suspended performance pursuant to T.C.A. § 47-2-610, RfsProtech properly performed all of its obligations under the Contract.

33. Pursuant to T.C.A. § 47-2-605, MTLC is precluded from relying on any defects in the System to justify its attempt to cancel the order, as MTLC failed to identify any defects in the System with particularity, and RfsProtech could have seasonably cured any alleged defects in the System.

34. As a direct and proximate result of MTLC's repudiation of the Contract, RfsProtech has incurred damages including, *inter alia*, MTLC's remaining unpaid balance on the Contract Price and other incidental damages, including the significant expenses RfsProtech incurred in building, maintaining, and storing the System, as well as additional incidental damages RfsProtech will incur in the future, all in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counter-Plaintiff RfsProtech, LLC, respectfully requests that this Court award it the following relief:

A. Any one or more of the remedies allowed RfsProtech pursuant to T.C.A. § 47-2-703;

B. Damages for the unpaid Contract Price pursuant to T.C.A. § 47-2-709;

C. Damages for nonacceptance and repudiation pursuant to T.C.A. § 47-2-708, including the difference between the market price of the System and the unpaid Contract Price, or the profit and reasonable overhead which RfsProtech would have made from full performance by MTLC;

D. Incidental damages pursuant to T.C.A. § 47-2-710

E. All other consequential damages allowable by law resulting from MTLC's breach and repudiation of the Contract;

F. Award of pre-judgment and post-judgment interest, attorneys' fees, and costs; and

G. Any further relief this Court deems just and equitable.

Dated: November 13, 2023.

Respectfully submitted,

*/s/ Jimmy B. Meeks Jr.*
J. Ross Pepper (BPR #14444)
Jimmy B. Meeks Jr. (BPR #39830)
1801 West End Ave, Suite 850
Nashville, Tennessee 37203
Phone: (615) 256-4838
*rpepper@pepperlawplc.com*
*jmeeks@pepperlawplc.com*
**ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, and all exhibits thereto, if any, have been served on the person(s) listed below by operation of the Court's electronic filing system 13th day of November, 2023. Service to:

Eugene N. Bulso, Jr.
Nicholas W. Tsiouvaras
Bulso PLC
155 Franklin Road, Suite 400
Brentwood, Tennessee 37027
Phone: (615) 913-5200
*gbulso@bulso.com*
*ntsiouvaras@bulso.com*

/s/ Jimmy B. Meeks Jr.
Jimmy B. Meeks Jr.